UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RICHARD ELDER,

      Petitioner,

v.                                    Case No. 3:24cv115-TKW-HTC

RICKY DIXON,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner, Richard Elder, proceeding *pro se*, filed a petition under 28 U.S.C. § 2254, challenging his conviction and sentence in Walton County Circuit Court Case No. 2014-CF-564. Doc. 1. After considering the petition, the record, the state's response, Doc. 9, the record below, Doc. 11, and Elder's reply, Doc. 16, the undersigned recommends the petition be DENIED without an evidentiary hearing.

## I.    BACKGROUND AND RELEVANT PROCEDURAL HISTORY

The State charged Elder on October 5, 2015, in a Second Amended Information with seven counts: (1) driving with a suspended license resulting in severe injury (listing all the victims); (2) – (6) five counts of reckless driving resulting in severe injury (a separate count for each victim); and (7) reckless driving resulting in property damage. Doc. 11-3. The charges stem from a multi-vehicle collision on August 1, 2014, at a busy intersection on U.S. 98 near Sandestin, Florida. Doc. 11-6 at 73-80. Witnesses testified that Elder's van was speeding

around 20 miles per hour faster than surrounding traffic as he hurtled toward the crowded intersection. *Id.* The van was seen dangerously changing lanes to go around slower traffic and eventually veering into the oncoming lanes to attempt to avoid the stopped cars in the turn lane. *Id.* Eventually, the van sideswiped several cars in the turn lane, careened into the intersection, and smashed into several more cars, causing severe injuries. *Id.*

At trial, Elder's passenger, Dale Gudger, testified that Elder inexplicably lost consciousness before approaching the intersection,[1] slumping over the wheel with his hands down at his sides and his foot pressed onto the accelerator. *Id.* at 286-88. Gudger testified he tried to revive Elder (even punching him in the face) but could not revive him. So Gudger grabbed the wheel and tried to control the van as it switched lanes and entered the intersection. *Id.*

Multiple witnesses, however, testified they saw Elder upright in the driver's seat, driving the van with his hands on the wheel at the "two and ten o'clock" positions. Doc. 11-6 at 136-44, 183 & 188. Several witnesses also testified they saw Gudger sitting upright in the passenger seat and not leaning over to try to steer the car. *Id.* at 183, 188-89, & 240-41. Additionally, the first person to approach

---

[1] Elder testified he did not remember anything about the drive after turning onto U.S. 98 a few minutes before the wreck. *Id.* at 263-65. He further testified he had been working as a house painter all day, had not been drinking, and was not angry or in a hurry. *Id.*

Elder's van after the wreck testified Elder looked at her and said, "I'm going to Hell." *Id.* at 95-96.

The jury convicted Elder as charged except it found only moderate, rather than severe, injury to one of the victims in Counts (1) and (5). Doc. 11-9. The state court sentenced Elder to consecutive five-year sentences on Counts 1 through 4 and 6 and time served on Counts 5 and 7, resulting in a total 25-year sentence. Doc. 11-12 at 15-18.

Elder filed a direct appeal to the First District Court of Appeals ("First DCA"), which affirmed the conviction and sentences *per curiam* and without a written opinion. *See Elder v. State*, 208 So. 3d 705 (Fla. 1st DCA September 26, 2016). The First DCA also denied a motion for rehearing on January 27, 2017. *See* Case No.: 1D15-5615. Because Elder did not seek review in the Florida or United States Supreme Courts, his conviction became final 90 days later, on Thursday, April 27, 2017. *See Bond v. Moore*, 309 F.3d 770, 773–74 (11th Cir. 2002) (holding a state prisoner's conviction becomes final when the U.S. Supreme Court denies certiorari, issues a decision on the merits, or when the 90-day period to file a petition for certiorari expires).

On November 9, 2017, Elder filed a Motion for Post Conviction Relief. Doc. 11-26. That motion was continuously pending until the First DCA affirmed the denial of the 3.850 motion *per curiam* and without a written opinion. *See Elder v.*

*State*, 374 So. 3d 776 (Fla. 1ˢᵗ DCA December 12, 2023). The First DCA issued the mandate on December 29, 2023. Doc. 11-36.

On February 16, 2024, Elder filed a Motion for Correction of Illegal Sentence. Doc. 11-41. The circuit court denied that motion on February 22, 2024, Doc. 11-42, and Elder did not file an appeal. Doc. 11-43. However, before the time for Elder to file an appeal expired, Elder filed the instant federal petition on March 12, 2024. Doc. 1 at 1. Because only 245 days[2] expired between the date the judgment became final and the date the instant petition was filed, excluding any time tolled by properly pending post-conviction motions, the petition is timely filed under the Antiterrorism and Effective Death Penalty Act ("AEDPA").[3]

## II.    LEGAL STANDARDS

The AEDPA governs a state prisoner's petition for habeas corpus relief. 28 U.S.C. § 2254. Under the AEDPA, relief may only be granted on a claim adjudicated on the merits in state court if the adjudication:

---

[2] 196 days expired from April 27, 2017, when the judgment became final, to November 9, 2017, when Elder filed his post-conviction motion for relief, and 49 days expired from December 29, 2023, when the First DCA issued the mandate on its denial of the post-conviction motion, to February 16, 2024, when Elder filed the motion for correction of illegal sentence.

[3] Under the AEDPA, a § 2254 petition must be filed within one year of certain "trigger dates." 28 U.S.C. 2244(d)(1). Here, the applicable trigger date is "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." Id. at § 2244(d)(1)(A). Additionally, the limitations period is tolled for the time during which a "properly filed" application for postconviction relief or other collateral review is pending in state court. 28 U.S.C. § 2244(d)(2). For purposes of this report and recommendation, the undersigned does not address any motions that do not affect the timeliness analysis.

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. *White v. Woodall*, 572 U.S. 415, 419 (2014).

"Clearly established federal law" consists of the governing legal principles set forth in the decisions of the United States Supreme Court when the state court issued its decision. *Id.* A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406). "A state

court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

In the petition, Elder raises several claims of ineffective assistance of counsel ("IATC"). To succeed on an IATC claim, Petitioner must show that (1) counsel's performance during representation fell below an objective standard of reasonableness, and (2) prejudice resulted, *i.e.*, that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 689 (1984).

The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential. *Id.* at 689. The defendant bears the burden of proving that counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *Id.* at 688-89

*Strickland*'s prejudice prong requires a petitioner to allege more than simply that counsel's conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. The petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Bare allegations the petitioner

was prejudiced by counsel's performance are not enough. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).

Finally, because the First DCA affirmed the judgment and conviction on direct appeal and the circuit court's denial of Elder's Rule 3.850 post-conviction motion without a written opinion, this Court will "look through" that decision to the circuit court's decisions denying these motions to dismiss because those are the last related state-court decisions that provide a relevant rationale and presume the unexplained decision adopted the same reasoning. *See Wilson v. Sellers*, 584 U.S. 122, 125 (2018).

## III.    DISCUSSION

In the petition, Elder raises one double jeopardy claim, six (6) ineffective assistance of counsel claims, and one cumulative error claim. For the reasons set forth below, the undersigned finds Elder is not entitled to relief on any of the claims asserted.

### A.    Ground One: Elder's Convictions and Sentences for Multiple Victims Injured During a Single Accident Violates Double Jeopardy

As stated above, the State charged Elder in Count 1 with driving without a license and causing injury through careless or negligent operation of a vehicle, as well as with six counts of reckless driving, with each reckless driving count based on causing severe injuries to a different victim involved in the crash. Elder argues that the trial court violated the Double Jeopardy Clause by sentencing him to five

consecutive five-year sentences based on a single collision. Elder exhausted his state court remedies on this claim by raising it in his direct appeal. Docs. 11-14 and 11-16. Elder also raised this claim in two posttrial motions to dismiss. Docs. 11-10 and 11-11.

The circuit court heard and denied the posttrial motions on November 17, 2015. Doc. 11-12. At the hearing, defense counsel argued counts 2 through 6 are merely degree variants of count 1 and allowing multiple punishments for them violates the Double Jeopardy clause. *Id.* at 3. The sentencing judge rejected that argument, agreeing with the State that count 1 required proof Elder had no valid driver's license, which is an element not included in counts 2 through 6, making it a separate offense. *Id.* at 4.

Defense counsel also argued the use of the word "another" in the reckless driving statute indicated that the legislature intended only one conviction per instance of reckless driving, even with multiple victims. *Id.* at 5-6. Thus, Elder argued only one 5-year sentence is appropriate for counts 2 through 6. The sentencing judge rejected that argument because each count involved a different victim. The state courts' rejection of these claims was not contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. 28 28 U.S.C. § 2254(d).

"The Double Jeopardy Clause of the Fifth Amendment provides that no person shall 'be subject for the same offence to be twice put in jeopardy of life or

limb.'" *Justices of Boston Mun. Court v. Lydon*, 466 U.S. 294, 306 (1984). This guarantee applies to the states through the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 794 (1969). The Double Jeopardy Clause embodies three guarantees: "It protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense." *Justices,* 466 U.S. at 307-08 (citation and footnote omitted).

Here, Elder claims the trial court violated the third guarantee by sentencing him to multiple punishments for a single offense. To determine whether there has been a violation of that guarantee, the Court must consider whether the legislature intended to allow multiple punishments under the reckless driving statute. *See Albernaz v. United States,* 450 U.S. 333, 344 (1980); *see also Brown v. Ohio,* 432 U.S. 161, 165 (1977) (noting "[w]here consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense."). In analyzing what the Florida legislature intended, a federal habeas court is bound to accept the Florida courts' construction of Florida law. *Deloach v. Wainwright*, 777 F.2d 1524, 1525–26 (11th Cir. 1985) (affirming denial of § 2254 petition and explaining that a federal court is "bound by the Supreme Court of Florida's interpretation of its legislative enactments" and determination that the

Florida Legislature intended multiple punishments for felony murder and the underlying felony).

Turning first to the argument that count 1 charges essentially the same offense as counts 2 through 6, the Court applies the well-known test from *Blockburger v. United States*, 284 U.S. 299 (1932).  *Williams v. Singletary*, 78 F.3d 1510, 1513 (11th Cir. 1996).  The *Blockburger* test "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offen[s]e' and double jeopardy bars additional punishment and successive prosecution."  *United States v. Dixon*, 509 U.S. 688, 696 (1993).  Here, the sentencing court's conclusion was consistent with *Blockburger*; there was no Double Jeopardy violation because count 1, which was based on Fla. Stat. § 322.34(6) includes an element – the lack of a valid driver's license – not required by § 316.192, which was the basis of counts 2 through 6.  Indeed, in Elder's reply, he "concedes that dual convictions for driving while license suspended or revoked and reckless driving do not violate double jeopardy principles as each contains an element that the other does not."  Doc. 12 at 2.

As to the second argument, that individual penalties for each victim under § 316.192 violate Double Jeopardy, this Court must defer to the state courts' interpretation of the reckless driving statute as allowing a separate sentence for each victim.  *See Mitchell v. Crews*, 2014 WL 3720829, at *8 (N.D. Fla. July 28, 2014) ("this court must defer to the state circuit court's interpretation of Florida law, including the court's interpretation of the elements of Grand Theft and Money

Laundering, whether the offenses are degrees of the same offense, and whether the elements of either offense are necessarily subsumed by the other.").

According to the Florida Supreme Court, "[w]here, during a single criminal episode, there are multiple victims or multiple injuries to a single victim, consecutive sentences are permitted at the discretion of the trial judge." *Miller v. State*, 265 So. 3d 457, 458 (Fla. 2018) (citing *State v. Sousa*, 903 So.2d 923, 925-26 (Fla. 2005); *State v. Christian*, 692 So.2d 889, 890-91 (Fla. 1997); *State v. Thomas*, 487 So.2d 1043, 1044-45 (Fla. 1986)). While no Florida court has applied this rule specifically to Fla. Stat. § 316.192, various Florida courts have found that consecutive sentences – one for each victim – are permissible for violations of a statute with identical language, namely Florida's driving under the influence ("DUI") statute, Fla. Stat. § 316.193.

Under § 316.193, a person who "is driving or in actual physical control of a vehicle" and "is under the influence," commits a third-degree felony if "by reason of such operation, causes or contributes to causing . . . [s]erious bodily injury to another." Fla. Stat. § 316.193(3)(c)(2). Similarly, Fla. Stat. § 316.192, provides that "Any person who drives any vehicle in willful or wanton disregard for the safety of persons or property" and "by reason of such operation, causes . . . Serious bodily injury to another" is guilty of a third-degree felony. Fla. Stat. § 316.192(1)(a), (3)(c)2.

Florida courts have construed the DUI statute as permitting multiple punishments arising from a single violation of the statute where injury results to several persons. *Melbourne v. State,* 679 So.2d 759, 765 (Fla. 1996) (explaining that "[t]he DUI driver may sustain multiple convictions because the violation causes injury to each victim."); *State v. Lamoureux,* 660 So.2d 1063 (Fla. Dist. Ct. App. 1995) (holding that multiple convictions and sentences for DUI with serious bodily injury are permissible for injuries to multiple victims arising from a single driving episode), *approved by,* 679 So.2d 1184 (Fla. 1996); *see also Bautista v. State,* 863 So.2d 1180, 1185-87 (Fla. 2003) (holding that legislative intent behind DUI manslaughter statute is to allow each death caused in a DUI crash to be charged and punished as a separate offense).

Because this Court must follow the state court's interpretation of Fla. Stat. § 316.192 as allowing for multiple convictions on the same violation for injuries to multiple victims, Elder is not entitled to relief on his double jeopardy claim.

## B.    Grounds Two through Seven - Claims Based On IATC

Elder raises 6 grounds for relief based on IATC. Elder raised each claim in his Rule 3.850 amended motion for post-conviction relief. The circuit court held an evidentiary hearing on October 19, 2021, and heard testimony from Elder, defense counsel, Joseph Alldredge, and other witnesses. On September 9, 2022, the court entered an order denying Elder relief. As to each IATC claim, the circuit court

applied *Strickland* and denied relief because Alldredge's conduct was based on a strategic decision.

Favoring one defense strategy over another is rarely a basis for finding ineffective assistance of counsel. "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Thus, "for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000).

As discussed below, the circuit court's application of *Strickland* was not contrary to or involve an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. 28 28 U.S.C. § 2254(d).

### 1. Ground Two: IATC for Failing to Request a Special Jury Instruction on a Loss-of-Consciousness Defense

In Ground Two, Elder argues that despite pursuing an "Act of God" theory of defense, counsel was ineffective for failing to request a special jury instruction that being unconscious is not a reckless act. Doc. 1 at 8. "The failure to request a jury

instruction is a specific attorney error that is subject to *Strickland's* performance and prejudice components." *Jenkins v. Sec'y, Dep't of Corr.*, 520 F. App'x 871, 873 (11th Cir. 2013). Applying *Strickland*, the circuit court determined counsel's performance, which was based on a strategic decision, was not defective because (1) counsel applied the theory to the standard instruction and (2) a special instruction was unnecessary.

At the evidentiary hearing, Alldredge testified he did not request a special jury instruction for loss of consciousness because the standard instructions adequately addressed this theory of defense. Doc. 11-32 at 395-98. Specifically, because the standard instruction required "recklessness," Alldredge was able to argue at trial that "being unconscious is not a reckless act." *Id.* at 397. Indeed, at trial, Alldredge argued: "You have to find that Mr. Elder was driving in a careless, negligent, or reckless manner to support a criminal conviction." Doc. 11-6 at 336. However, "[t]he physical evidence supports Mr. Elder's belief and testimony that he blacked out. It supports Mr. Gudger's testimony." *Id.* at 340-41. "And based upon his determination and the facts in the case that support Mr. Elder and Mr. Gudger's statements and testimony that this was an accident. And the State hasn't shown you proof or evidence sufficient enough to show beyond a reasonable doubt that Mr. Elder was doing anything other than driving appropriately and passed out." *Id.* at 242.

Furthermore, under Florida law, a trial court has wide discretion regarding the instructions to be given to the jury. *See e.g.*, *Kearse v. State*, 662 So. 2d 677, 686 (Fla. 1995). The initial determination of the applicable substantive law in each case should be made by the trial judge and the judge is charged with correctly instructing the jury in each case. *Matter of Use by Trial Courts of Standard Jury Instructions in Criminal Cases*, 431 So. 2d 594, 598 (Fla. 1981). In Florida, "the standard jury instructions are presumed correct and are preferred over special instructions." *Stephens v. State*, 787 So. 2d 747, 755-56 (Fla. 2009). "Where the Florida Standard Jury Instruction adequately apprises the jury as to the law and evidence, it is proper to give the standard instruction rather than a requested special instruction." *Alvarez v. State*, 890 So. 2d 389, 397 (Fla. 1st DCA 2004).

Thus, for Elder to succeed on this claim, he must "establish that the standard instructions given in the case were inaccurate or insufficient in light of the evidence presented". *Harris v. Sec'y, Dep't of Corr.*, No. 4:15CV240-RH/CAS, 2017 WL 3473934, at *5 (N.D. Fla. May 3, 2017), *report and recommendation adopted,* No. 4:15CV240-RH/CAS, 2017 WL 3461300 (N.D. Fla. Aug. 10, 2017). Elder, however, has not done that here. Indeed, he has not shown that the circuit court would have given a special jury instruction on loss of consciousness even if Alldredge had sought to include one. Therefore, he cannot show that he was prejudiced under *Strickland*, by Alldredge's failure to do so.

Because the state court was reasonable in finding counsel was not ineffective for declining to move for a specific jury instruction, Elder is not entitled to relief on Ground Two.

### 2. Ground Three: IATC for Failing to Investigate Whether Elder Suffered a Seizure Episode and Failing to Call an Expert Witness to Support a Loss of Consciousness Defense

In Ground Three, Elder argues Alldredge failed to investigate his loss of consciousness and failed to call an expert who would have testified that Elder had suffered a loss of consciousness which caused the wreck. Doc. 1 at 9-10. After considering testimony from Alldredge, Elder, and Dr. Randi McDonald, a licensed psychologist, the court applied *Strickland* and concluded Alldredge's conduct was reasonable.

At the evidentiary hearing, Alldredge testified he investigated the loss of consciousness argument by discussing the matter with Elder and asking him to speak with his medical providers about the existence of any pre-existing conditions in his medical history and did not get a response from Elder. *Id.* at 400-01 ("Yes, Mr. Elder had been seeing his own physician and I asked him to address that with that doctor and look at his medical history, his medications, the circumstances and get an explanation of what may have happened and my understanding that the doctor was unwilling or could not provide the information."). As Elder testified to at the hearing, his treating physician, however, was not going to help him. *Id.* at 402. Alldredge explained he wanted to start there because "it would have been

detrimental" to Elder's case to seek an expert on the issue and then find out that he suffered from a condition that he should have been aware of. Alldredge explained he did not seek consult with an expert because there we no "medical indicators that would show a propensity to pass out." *Id.* at 402-03. Because Alldredge did not have a basis to retain a specific expert, he decided to focus on the eyewitness testimony of Elder's passenger, and explained, "The evidence we had was someone sitting next to him watching and relaying what they saw. That was the best evidence." *Id.* at 404.

The circuit court denied relief, finding that, based on the testimony (1) Alldredge investigated Elder's loss of consciousness and (2) made a reasonable strategic decision not to continue to investigate the issue further. Doc. 11-32 at 443. On habeas review, it is not this Court's duty to again determine the reasonableness of counsel's actions, but "to determine whether the state habeas court was objectively reasonable in its *Strickland* inquiry." *Putnam v. Head,* 268 F.3d 1223, 1244, n. 17 (11th Cir. 2001), *cert. denied,* 537 U.S. 870 (2002). Here, the circuit court's conclusion that Alldredge's conduct was not ineffective under *Strickland* was objectively reasonable. Thus, Elder is not entitled to relief on Ground Three.

### 3. Ground Four: IATC for Failing to File a Motion in Limine to Exclude Petitioner's Post-Accident Statement "I'm Going to Hell."

In Ground Four, Elder argues his counsel was ineffective for failing to file a motion in limine to exclude the statement, "I'm going to Hell," he made to Sergeant

Pendleton immediately after the accident.  Doc. 1 at 11-12.  The circuit court applied *Strickland* and found that Alldredge's decision to not file a motion in limine was a strategic one and therefore was not inffective.  Doc. 11-32 at 444.

Elder and Alldredge testified at the evidentiary hearing that they discussed whether to file a motion to exclude Elder's post-accident statement.  11-32 at 425-26 & 404-05.  Although Elder felt the statement would be harmful, he also left the decision in Alldredge's hands, and after discussion, the two agreed to let the statement in "for sympathy." *Id.* at 405.  Alldredge testified he recommended letting the statement come in because he was "hoping that it would elicit some sympathy for Mr. Elder because there was little to draw on to get that from the jury." *Id.*  As Alldredge explained, "I think him making that statement showed that he had remorse for the situation and concern for the other people.  He didn't say that he had done anything inappropriate or wrong." *Id.* at 405-06.

The circuit court's determination that Alldredge was not ineffective because his decision not to move to exclude the statement was a strategic one was objectively reasonable.  As described above, counsel's reasonable strategic decisions are entitled to considerable deference.  "[F]or a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Chandler*, 218 F.3d at 1315.  Elder has not met that high standard; he is not entitled to habeas relief on Ground Four.

### 4. Ground Five: IATC for Failing to Elicit Testimony for Elder That He Suffered an Apparent Seizure Episode in the Summer of 2012

In Ground Five, Elder argues Alldredge was ineffective for failing to ask Elder at trial about an episode in 2012 where he suffered a sudden loss of consciousness. Doc. 1 at 13-14. The circuit court applied *Strickland* and found that Alldredge made a reasonable strategic one not to ask about the 2012 incident. Doc. 11-32 at 445-46.

Elder testified at the evidentiary hearing that in 2012 he was working at a restaurant when "one minute [he] was working and the next minute [he] was laying on the ground." *Id.* at 427. Elder discussed the incident with Alldredge. *Id* at 407-08, 427. However, Alldredge decided not to introduce the incident at trial "because if you put on evidence that he has a propensity to pass out and then he drives with that driving history, I think that helps the State." *Id.* at 408. That is, "if he knew he had a preexisting condition, the fact that he drove could be considered that he acted carelessly or potentially recklessly to the public." *Id.* at 416. Moreover, as Alldredge explained, Elder had "no documentation and nothing to support proof" of the prior incident.

The circuit court was not unreasonable in finding Alldredge's decision was a reasonable strategic decision. Therefore, Elder is not entitled to habeas relief on Ground Five.

**5. Ground Six: IATC for Failing to Object and Move for a Mistrial Based on the Prosecutor's Burden-Shifting Arguments in Closing**

In Ground Six, Elder argues Alldredge was ineffective for failing to object or move for a mistrial after the prosecutor's comments in closing impermissibly shifted the burden of proof onto Elder. Doc. 1 at 15-16. Specifically, Elder claims Alldredge should have challenged the prosecutor's comment that "The defense has also – they even admitted to you they have no explanation for why in the world he conveniently blacked out in the intersection. No explanation about why it would have happened afterwards or before . . . He had no reason to be blacking out in that situation." *Id.* at 15.

The circuit court applied *Strickland* and found counsel's performance was not defective and Elder was not prejudiced by counsel's failure to object or move for a mistrial. Doc. 11-32 at 449-50. This conclusion was not contrary to or involve an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. 28 28 U.S.C. § 2254(d).

First, under Florida law, a lawyer is given wide latitude when making arguments to a jury. *Breedlove v. State*, 413 So. 2d 1, 8 (Fla. 1982). Counsel may draw logical inferences from the evidence and is allowed to advance all legitimate arguments. *Id*. This state rule is essentially the same as the federal due process standard governing allegedly improper argument by the prosecution—a prosecutor may argue both facts in evidence and reasonable inferences from those facts. *See*

*Tucker v. Kemp*, 762 F.2d 1496, 1506 (11th Cir. 1985) (citations omitted). A prosecutor may comment on the uncontradicted or uncontroverted nature of the evidence and may point out an absence of evidence on a certain issue during the closing argument. *See White v. State*, 377 So. 2d 1149, 1150 (Fla. 1980) (citations omitted). Additionally, prosecutorial comments upon a general lack of defense evidence are permissible. *See Smiley v. State*, 395 So. 2d 235 (Fla. 1st DCA 1981).

Here, the prosecutor did not expressly argue that the defendant had a burden to present evidence; instead, he confined his argument to the evidence contradicting the defense's version of events and the lack of evidence supporting Elder's version of events. This is a permissible closing argument and does not constitute burden shifting. Thus, the court would have likely overruled any objection and an attorney cannot be deemed ineffective for failing to raise claims that are "reasonably considered to be without merit." *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (quotation omitted); *see also*, *Johnson v. Fla. Dep't of Corr.*, 2021 WL 2457658, at *9 (M.D. Fla. June 16, 2021) ("Since the prosecutor's comments in closing were logical inferences based on the testimony and evidence, there was no deficiency in counsel's performance in failing to object to the comments.")

Second, Elder cannot show he was prejudiced by the prosecutor's comments. On federal habeas review, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986). Elder,

however, has not shown that had an objection been made, and granted, the outcome of his trial would have been any different. *Tucker v. Kemp*, 802 F.2d 1293, 1296 (11th Cir. 1986) ("If a reviewing court is confident that, absent the improper remarks, the jury's decision would have been no different, the proceeding cannot be said to have been fundamentally unfair."). Indeed, "the prejudice from the comments of a prosecutor which may result in a shifting of the burden of proof can be cured by a court's instruction regarding the burden of proof," *United States v. Simon*, 964 F.2d 1082, 1087 (11th Cir. 1992), and were in this case. Specifically, the judge instructed the jury, "The defendant is not required to present evidence or prove anything." Doc. 11-6 at 360. Such an instruction cures any prejudice from the prosecutor's comments. *See Broxterman v. Sec'y, Dep't of Corr.*, 2023 WL 6247599, at *10 (M.D. Fla. Sept. 26, 2023) (jury instruction that "[t]he defendant is not required to present evidence or prove anything" found sufficient to cure prosecutor comments even if assumed to be improper burden-shifting).

Therefore, because Alldredge's performance was not deficient and Elder was not prejudiced by the comments, Elder is not entitled to habeas relief on Ground Six.

### 6. Ground Seven: IATC for Failing to Present Adequate Mitigating Evidence at Sentencing

Elder argues Alldredge should have introduced additional mitigating evidence at sentencing that would have resulted in a downward departure or the running of the sentences concurrently rather than consecutively. Specifically, he claims

Alldredge failed to offer evidence Elder suffered from various mental illnesses that would have justified a downward departure under Florida Statutes § 921.0026, Doc. 1 at 17, and to introduce mitigation letters and witness, which would have shown his capacity to understand the criminal nature of his conduct was impaired, he required specialized mental health treatment, and he has shown remorse. Doc. 11-32 at 56-57. The circuit court applied *Strickland* and found counsel's decision not to offer this evidence was a reasonable strategic decision as there was nothing indicating Elder's mental health was compromised.

To justify a downward departure, Elder would have to show he required specialized mental health treatment unrelated to substance abuse. *See* Fla. Stat. § 921.0026(2)(d). Alldredge testified at trial that he "did not see any issues with [Elder]'s mental health." *Id.* at 409. Moreover, Elder failed to present evidence to show that he needed such specialized treatment. To the contrary, at the evidentiary hearing, Dr. McDonald testified although Elder had a prior diagnosis of Bipolar II disorder and that such disorder can be treated by any psychiatrist or medical doctor and has a common treatment method. Doc. 11-32 at 391-92. Thus, Elder's claim that he would have received a downward departure is purely speculative. In fact, based on statements made by the sentencing court, it appears Elder's sentence was motivated by the court's consideration of Elder's prior record and that "he's never had any respect for the laws of the State of Florida." Doc. 11-12 at 15-16.

Because counsel did not have a basis for seeking a downward departure, he cannot be ineffective for failing to do so. Moreover, because Elder's claim is speculative, Elder is not entitled to habeas relief on Ground Seven.

### C.    Ground Eight: Cumulative IATC

Elder argues that the cumulative effect of counsel's deficient performance prejudiced him. Doc. 1 at 19. The Eleventh Circuit addresses "claims of cumulative error by first considering the validity of each claim individually, and then examining any errors that [it] find[s] in the aggregate and in light of the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial." *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012). Indeed, the Eleventh Circuit has explained that where there is no individual merit to individual claims, the argument that cumulative error requires reversal is baseless. *United States v. Taylor*, 417 F.3d 1176, 1182 (11th Cir. 2005). Here, because the Court has determined that none of Elder's individual claims of error or prejudice have merit, Elder's cumulative error claim cannot stand. *See id.* ("There being no error in any of the district court's rulings, the argument that cumulative trial error requires that this Court reverse [the defendant's] convictions is without merit."). Therefore, Elder is not entitled to habeas relief on Ground Eight.

## IV.   CONCLUSION

### A.   Evidentiary Hearing

The undersigned finds that an evidentiary hearing is not warranted.   In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).   Additionally, this Court must consider the deferential standards prescribed by § 2254.   *See id.*   Upon consideration, the undersigned finds that the claims in this case can be resolved without an evidentiary hearing.   *See Schriro*, 550 U.S. at 574.

### B.   Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Court provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."   If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   28 U.S.C. § 2254 Rule 11(a).   A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.   28 U.S.C. § 2254 Rule 11(b).   After review of the record, the Court finds no substantial showing of the denial of a constitutional right.   § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted).

Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

Accordingly, it is respectfully RECOMMENDED:

1.     That the petition under 28 U.S.C. § 2254, challenging the conviction in *State v. Elder*, 2014-CF-564, in the First Judicial District, in and for Walton County, Florida, Doc. 1, be DENIED without an evidentiary hearing.

2.     That a certificate of appealability be DENIED.

3.     That the clerk be directed to close the file.

At Pensacola, Florida, this 7th day of November, 2024.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed **within fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.